PIERCE, Judge.
In this case appellant Helen Beaver, a widow, plaintiff below, appeals a final summary judgment entered by the Highlands County Circuit Court in favor of appellee Claude Franklin Howerton, as defendant below.
By amended complaint, plaintiff sought damages for the death of her husband as the result of a collision on State Road #700 near Sebring between the truck he was driving and a black cow which defendant Howerton allegedly permitted to escape from his ranch. In Count I it was alleged that Howerton failed to properly maintain his fences, failed to secure and enclose his gates to his pasture, and otherwise carelessly and negligently permitted the cow to run at large upon said State Road. In Count II it was alleged that Howerton had exclusive control and management of the cow and had not exercised proper care in fencing and otherwise restraining the cow to see to it that the cow could not have been upon the highway.
Howerton filed his defenses, setting forth inter alia that the amended complaint failed to allege specific facts showing any breach of duty owed by Howerton to plaintiff or establishing Howerton’s negligence; that it did not allege in what manner Hower-ton’s fence was impropely maintained or in what manner Howerton failed to properly secure the gate or how he willfully or negligently permitted the cow to run at large; denied it was his cow that was involved in the accident; denied any negligence on his part; and alleged contributory negligence on the part of the decedent driver of the truck.
By answers to interrogatories, plaintiff admitted she had no specific facts concerning the alleged improper maintenance of Howerton’s fences; that she had no witnesses that the fences were improperly maintained or that the gates were improperly secured; that she did not know which gate was impropely secured or the manner it was improperly secured; that she had no knowledge “regarding ownership of the black cow in question”; that she had no details as to the manner in which Hower-ton willfully or negligently permitted the cow to run at large; and that she did not know in what manner Howerton had violated F.S. § 588.11, F.S.A. or had violated “the common law”.
Howerton moved for summary judgment on the basis of the pleadings and plaintiff’s answers to interrogatories, which motion the Court granted. Upon entry of final summary judgment accordingly, plaintiff has appealed to this Court. We affirm.
Appellant Beaver relies upon F.S. §§ 588.14 and 588.15, F.S.A. which are a compilation of §§ 3 and 4 of Ch. 25236, *64 General Laws of 1949, known as the Warren Act[1], and which read as follows:
“588.14 Same; duty of owner
No owner shall permit livestock to run at large on or stray upon the public roads of this state.”
“588.15 Same; liability of owner
Every owner of livestock who intentionally, wilfully, carelessly or negligently suffers or permits such livestock to run at large upon or stray upon the public roads of this state shall be liable in damages for all injury and property damage sustained by any person by reason thereof.”
The Warren Act was first before the Appellate Courts of Florida in the Supreme Court case of Lynch v. Durrance, Fla. 1955, 77 So.2d 458, on a collateral point, but that Court pointed out that the three matters dealt with in the Act were: “(1) prohibiting livestock from running at large; (2) making the owner liable for damages, and (3) fixing a penalty * * *
Gordon v. Sutherland, Fla.App. 1961, 131 So.2d 520, was a case wherein the surviving widow sued for injuries and subsequent death of her then husband resulting when an automobile being driven by him collided with “two black angus cows” owned by defendants. At trial verdict was directed for the defendants and final judgment entered accordingly. Upon appeal the 3rd District Court, after quoting F.S. §§ 588.14 and 588.15, F.S.A., supra, and adverting to the Supreme Court opinion in Lynch, said inter alia:
“ * * * there is no merit in appellant’s contention that the fact that an animal was running at large on the highway justified an inference that defendants had violated the statute. The evidence before the trial judge was completely devoid of proof that the defendants negligently suffered or permitted the cows to be on the highway; therefore, there was no evidence of negligence and no prima facie case. Any other holding would disregard the plain language of the statute.
Because there was no presumption of negligence from the fact that the cows were on the highway, it is unnecessary to consider appellant’s contention that the appellee Sutherland’s testimony created a jury question as to whether ‘the presumption of negligence was rebutted.’ ”
In Lee v. Hinson, Fla.App.1964, 160 So. 2d 166, Lee sued Hinson because he was injured and his automobile demolished in a collision between his automobile and two horses belonging to Hinson at about 2:30 A. M. This 2nd District Court affirmed upon appeal a final summary judgment entered in favor of Hinson and in the course of its opinion this Court said:
“The record here establishes, without genuine issue as to any material fact, that neither the defendant nor his servants or agents, for whose acts the defendant would be responsible, was negligent. The mere fact that the defendant’s horses were running at large upon the public highway does not justify an inference that the defendant intentionally, willfully, carelessly or negligently permitted them to so run at large on the highway in violation of § 588.14, Florida Statutes, F.S.A. See Gordon v. Sutherland, Fla.App.1961, 131 So.2d 520. The record clearly and unequivocably estab *65 lishes that the defendant was entitled to summary judgment.”
In Welch v. Baker, Fla.App.1966, 184 So.2d 188, the Welches, man and wife, were injured “when the automobile in which they were traveling ran into three of the defendant’s said cattle, which had darted across the road in front of them” in the nighttime. It was established that the cattle, “in order to reach the public road from the enclosure in which [the owner Baker] placed them, had broken through the nailed gate of the fence enclosing the pasture in which they were grazing, then travelled some distance west away from the said public road and went through another gate and wooden fence before arriving in a field adjacent to the said road, which field was surrounded by a defective electric fence, which marked the boundary of defendant’s property and was adjacent to the said road near where the collision occurred”. Baker was sued for violating F.S. § 588.15, F.S.A., and upon trial the Circuit Court directed verdict for Baker. Upon appeal, the 1st District Court, after quoting the statute and approving the two previous District Court opinions in Gordon and Lee, said—
“ * * * ^e mere fact th.at the defendant’s cattle were running at large upon the public road does not justify an inference that the defendant intentionally, willfully, carelessly, or negligently permitted them to do so; that the plaintiff, therefore, in order to recover damages, has the burden of proving that the defendant, or his agents or employees, intentionally, willfully, carelessly, or negligently permitted his cattle to run at large or stray upon the public road.”
The foregoing four cases are the only cases in the Florida Appellate Courts construing the Warren Act and its applicability in civil actions for damages resulting from a collision between an automobile and livestock. Howerton contends, and Beaver concedes, that they are uniformly against Beaver and foreclose successful action by Beaver in the instant case. Plaintiff Mrs. Beaver frankly admits in her brief that she “was unable to affirmatively demonstrate that there was any defect in the fencing or that the gates of the defendant were open”, but contends that the Courts in the four cases, supra, were wrong when they “essentially held that the plaintiff had the burden of proving that the defendant let his cattle run at large by affirmative proof of some specific act of negligence, such as improper fence maintenance or failure to close a gate”.
Mrs. Beaver thereupon in her brief filed here says that “she is asking this Court to reverse a well-established line of authority, and recognizes that she must present compelling reasons for this Court to take such bold action”. Such compelling reasons, she says, are that “in nineteen years”, the Warren Act “has permitted only four cases to reach the appellate level, and in each case” it has been ruled that plaintiff has the burden of proof of showing the owner’s negligence, which, according to Mrs. Beaver, “makes the statute meaningless”; that it is “an impossible burden of proof to carry”; that the “information is simply not available to the plaintiff which would permit her to present affirmative testimony regarding negligence of the defendant”; and that in the typical livestock accident case, “the only eye-witnesses are usually dead and a great deal of time elapses before the plaintiff has opportunity to make investigations, during which time the defendant can simply close a gate or replace a staple in a fence line.” She thereupon argues that “the intent of the Warren Act would be better served,” if the Courts would “shift the burden of proof to the defendant * * * to require him to show that the cow or other animal did not escape through some negligence on his part but through some other means such as vandalism,” and that in such situation “the rancher would have a greater incentive to keep gates closed and fences repaired in the first place.” At oral argument, counsel for Mrs. Beaver advised us that he would have no objection to an *66 affirmance if we would “call upon the Legislature” to amend the Warren Act so as to cast upon the defendant owner the burden of proving he was not negligent.
We have no authority to “advise” the Legislature, nor the inclination to “reverse” the Courts in the aforesaid cases. Much less do we have the disposition to “legislate” ourselves. So we will stay in our proper sphere and affirm the judgment appealed.
But at the risk of editorializing, and because appellant scornfully says that the Warren Act “has become virtually useless,” we feel impelled to observe that, on the contrary, the Act has proven to be one of the most forward-thinking, progressive, humane, and beneficent pieces of legislation ever to be enshrined on the statute books of Florida. It has undoubtedly saved more lives than the Salk Serum and penicillin combined.
Affirmed.
HOBSON, Acting C. J., and MANN, J., concur.

. Named after that illustrious, industrious, ebullient, distinguished, resplendent, flamboyant, eloquent, distinctive, celebrated, and otherwise eximious Governor of Florida, Honorable Fuller Warren, (1949-1953), who successfully campaigned for office upon his promise to the people to “get the cattle off the highways”, and whose only known remarks since leaving that high office have been, in his soft, quiet, modest, self-effacing, modulated, retiring and self-abnegative manner, have been “all I want is to be known as a good Governor” and “I’ll never write you another letter, Mr. Editor”.